Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the court is now sitting. God save the United States and this honorable court. You may be seated. Ms. Baldwin, when you're ready. Yes, Your Honor. Good morning, Your Honors. Melissa Baldwin on behalf of the appellant I'll start with the condition that states Mr. Ellis shall not have access to electronic devices that can be connected to the internet without his probation officer's prior approval except for employment purposes. Now this condition by its plain language permits denying Mr. Ellis non-employment or internet access for non-employment purposes, which is contrary to this court's decision in his initial appeal and the Ellis decision as well as the Hamilton case from this court that found an internet ban for non-contact sex offenders was a greater deprivation of liberty than reasonably necessary. So the district court also erred in delegating the determination of whether and how Mr. Ellis could access the internet to his probation officer. So this condition is similar to the employment condition this court vacated in Hamilton, where in Hamilton the district court had imposed on the offender that any type of employment he takes must have the prior approvals probation officer. This court found that the lack of boundaries in what types of employment should be permitted was a violation that required vacating the condition so the district court could impose guidance or parameters on how the probation officer should employ that condition. Aren't you over reading that a little bit? Now is it just that the probation officer is entitled to know what type of device it is, not that he has to approve it? Isn't that the way it came out the second time around? Respectfully Your Honor, we disagree. We think the condition as written states... I agree with you in terms of the writing. That's not the best, but what just Ridinger said essentially is it's not that you have to approve the device, you just have to tell him what kind of device you got. So we would disagree that the district court made that determination. So what the district court did in that is it rejected the proposition of providing notice saying, for instance, the probation officer needs to be able to, you know, deny devices that can't be monitored. So that indicates it's just a demonstrative example. That is not the extent the condition goes to. And furthermore, even if the district court had provided some guidance principles at the sentencing, Mr. Ellis is entitled to a written condition that accurately conveys his sentence. So if there were guiding principles orally pronounced at sentencing not reflected in the written judgment, the remedy would be to vacate that condition with instructions to have it comport with the actually pronounced sentence. You didn't make that, that's a Roger Singletary type argument. You didn't make that argument, did you? No, because our argument is the condition as written violates 3583D and is impermissible delegation. The government argues you can affirm this condition based on guiding principles that were announced at sentencing. We're saying you can't do that because that would be another violation in the fact it would, it would deny Mr. Ellis the right to have the official record of his sentence, which is the only document that we can be assured the probation officer is going to review actually comports with his sentence. So it's not an affirmative argument, it's an argument saying the government's, the government's defense of this condition is itself, would itself constitute an error. Your position is that the transcript of the sentencing is not going to be with the probation officer? Correct, correct, correct, Your Honor. But the judge said in court, it's going to be what the black letter of the letter says. Right, it is what the written condition says. But oftentimes, the transcripts never even produce. And, you know, again, we disagree that the, that the district court simply saying, for instance, the probation officer has to be able to deny a device, that is not sufficient in and of itself, right? There needs to be more guidance principles. So, for example, in Hamilton, this court proposed, it said, you know, perhaps the district court could say, you know, types of employment he didn't want the sex offender to participate in, or employment where he was likely to be involved with different categories of people. But left it to the district court to ultimately craft what it thought was appropriate in that case. But here, there's simply no guidance principles. To the extent there is any guidance principle in this condition, it is a general prohibition on internet access for non-employment purposes. Counsel, if you look through the, you know, the document, the judgment with the written conditions in it, many of them say things that are described with, you know, with probation's approval. I mean, I didn't count them, but it's almost every other one. Is it your position that every one of those is invalid? Absolutely not, Judge Quattlebaum. So, our position is, you know... Okay. I'm going to let you finish. Sorry. But, in answering my question, tell me what guidance we get in all those other conditions that say with probation's approval and how that differs from this one. Sure. So, in those, so we're saying prior approval is not per se a non-delegation issue. It certainly is an indicator there could be a delegation issue, but it only becomes a delegation issue when the general prohibition is itself impermissible. So, for example, in Hamilton, where the court found that, you know, an internet ban subject to probation officer's prior approval was legitimate because that sex offender, you know, it was a reasonable restriction. So, they affirmed it even if on the assumption the probation officer may allow an exception in the future, but not. But the district court made that initial determination dictating the extent of its punishment. And similarly in the Comer case that the government cited in its 28-J, again, that was the defendant shall have no social networking accounts without probation officer's prior approval. Now there, the court found it was perfectly acceptable under 3583-D and a reasonable deprivation to say that this defendant who used social networking to operate a, you know, human trafficking ring could be prohibited from having social networking accounts. Can we or should we rewrite the condition you're complaining of? And if so, what would it say? I think the normal course is for this court to just vacate with instructions to rewrite it in accordance, but it can also provide some guidance like it did in the Hamel decision saying, you know, the types of considerations or tailoring that would be sufficient. So, in this case, we've cited, I think it was the Fifth Circuit Fernandez case saying like any of the defendants shall have access to the internet provided it's, you know, on a monitored device. Or again, in the Amin decision the government cited in its 28-J letter, excuse me, 28-J letter, it was the defendant shall be subject to screening or monitoring of internet use as directed by the probation officer. Now again, this is something that we had argued for the district court as a way of tailoring it to limit the probation officer's discretion. At JA-147, we're saying why not just require him to have monitored internet access? And despite going through this again and again with the district court, we still haven't had an answer why monitoring is insufficient and, you know, this kind of categorical ban is appropriate. Well, just to be fair, I mean, you may, you did that most recently, but that was only after three times when you didn't object at all. Correct, Your Honor. So, but we've learned from our mistakes, which is why we did prompt the district court in the latest instance to please tell us why monitoring is insufficient. You know, I know I've seen some other cases where monitoring is insufficient. For example, I think it was a NASA aerospace engineer who could bypass computer monitoring. Mr. Ellis, there's nothing indicating he's a sophisticated computer user. I mean, he's just, the record shows that. So here we think monitoring would be sufficient, but of course, you know, we're open to other reasonable restrictions we may not have contemplated. And, you know, there's a bunch of case law. Again, the district court didn't ask for briefing on this condition, alternative language. It didn't tell the parties to meet and confer. All of these options were available to the district court, but instead the district court just said, you know, this is a standard sex offender condition in our district. I haven't heard complaints about this before. And I mean, he actually said to defense counsel, I'll listen to you, but I'm not hearing it. And so we say in this case, it's, you know, it's inappropriate. And to the extent the district court wants to limit Mr. Ellis's internet access, which we agree Mr. Ellis presents a recidivism risk that could warrant some reasonable internet restrictions. But it's for the district court to tailor those and not just watch his hands of it and tell the probation officer to figure it out. So now I'll move on to the GPS monitoring condition. And here we're saying that this condition, six months of location monitoring with GPS, violates 3583D because it both lacks a reasonable relationship to Mr. Ellis's history and characteristics as well as being an over broad liberty deprivation here. But hadn't that condition expired on its own? No, Your Honor. So I believe there's at least four months, if not five months of GPS monitoring because Mr. Ellis has been incarcerated. And so his supervision period that Judge Reidinger had imposed has been told this entire time it's set to go back into effect, I believe in September of 2025, at which point he would go back on and serve the remainder of his GPS monitoring condition. How much time? It's at least four months. I think it's actually around five months. I think he's only served at most one month. But he for sure has some of that condition left to serve when he is released. Counsel, is it appropriate to consider his conduct on supervised release in setting conditions including the GPS device? Yes, Your Honor. Absolutely. So why then is the conduct of leaving the jurisdiction, which you did earlier, without permission and the conduct about letting the batteries and the device when it was previously imposed and I think not objected to? Are those factors that can be considered by the district court? Those are factors that the district court absolutely can consider. But the district court also has to consider when those factors occur. And so, for example, the last time he left the district was in January 2019, about 18 months before the district court imposed this condition. And he went to South Carolina while wearing a GPS monitoring. So we would say the fact a defendant had a prior positive marijuana test is certainly a relevant factor that the district court can consider. But requiring someone to go into substance abuse treatment for having one positive marijuana test two years ago has a very tenuous relationship and surely is a greater deprivation of liberty than reasonably necessary. Is the standard that we look at that condition abusive discretion? Yes, Your Honor. I think that applying the language of 3583, it's still reviewed for abuse of discretion, correct? Right. It's an abuse of discretion. But if the condition exacts a greater liberty deprivation than necessary, it violates 3583D. And by definition, a district court abuses its discretion when it makes an error of law. So here, given the fact that Mr. Ellis certainly had some issues with, you know, his physical whereabouts, but those have been redressed with and his latest terms of supervision, that has not been an issue. He has been where he's supposed to be. As I said, the last time he was somewhere he wasn't supposed to be was about 18 months before the district court ordered this. So here it can do what it had done originally. And if Mr. Ellis does, you know, go somewhere where he's not supposed to be or whatnot, it can impose the GPS monitoring condition at that point or home detention like it has done in the past. So counsel, I'm sorry to cut you off, but you talk about how it's been 18 months, but doesn't that 18 months include 11 months of incarceration? Or some period of incarceration? I don't think there's like 18 months of time when he's been outside of jail and there's not been a problem. I get your point. You may still have a point that that happened in the past and maybe not have been the event that precipitated this particular hearing. But am I right that there's a period where he was incarcerated that we really shouldn't perhaps consider a time where there's not been a problem? I mean, certainly you don't have to consider the time he was incarcerated. But the problem is here, right? His fourth supervision term, which is the term leading to this revocation, he was on supervision from December to June and had no instances and had no instances of going somewhere he wasn't supposed to be. So in closing, I would ask this court to vacate the two supervised release conditions. The prior—sorry, Judge Floyd, did you—okay, I thought you had a question. Sorry. The prior approval condition both violates the non-delegation doctrine by failing to provide the probation officer guidance on the extent of an Internet restriction for Mr. Ellis' term of supervision as well as authorizing the probation officer to deny Internet access for non-employment purposes, which is contrary to 3583D in this court's precedent. We'd also ask the GPS monitoring location be vacated because it violates 3583D by being not reasonably related or having such a tenuous connection to Mr. Ellis' underlying characteristics to be an overbroad and unnecessary liberty deprivation. Thank you. Thank you, Ms. Baldwin. Mr. Enright? Thank you, Your Honor. May it please the court, Anthony Enright of the United States. The district court acted within its discretion by requiring six months of location monitoring. I will note that, yes, he was—he didn't respond to his probation officer despite several requests on his most recent revocation, but he was where he was supposed to be while he was on location monitoring. His attorney before the district court twice contrasted that behavior with his prior behavior when he was not on location monitoring, saying, well, that's when he was absconding from the jurisdiction. He left the jurisdiction twice in addition to absconding for more than a month. He lied about his whereabouts. He failed to appear for treatment multiple times. And those are absolutely, as Your Honor mentioned, things that the court can take into account when determining whether to put him on six months of location monitoring. He had been on 12 months of location monitoring when he violated most recently, and the court imposed a less onerous restriction, one that had proved to improve his compliance with location-related conditions. So it was reasonably related to his history and characteristics, and no more restrictive than reasonably necessary, as the statute requires. The court also acted within its discretion by requiring Ellis to obtain his probation officer's approval for non-employment-related devices. So, you finished GPS? I'm happy to answer any questions about it. I'll just make sure you—I don't want you to go into that before you—I didn't know—okay. Let me ask this. So, the basis for the GPS monitoring is solely to prevent him from going in a jurisdiction he should not be in, right? I think it's to ensure that the probation officer can monitor his whereabouts, because he struggled with being where he was supposed to be. That's a direct quote from— But it's nothing about the venue of where he is, other than he's not supposed to be the jurisdiction that does it, right? For example, it's not a situation like a person who's drugs, for example. We want to make sure he's not in an area where he's near drug activity. It's nothing about where his location is that's the problem, other than he crosses a line out of the jurisdiction, correct? There aren't off-limits locations. Like what? What are the off-limits, other than he can't go across the state line? I'm sorry, Your Honor. There are not off-limits locations. That's what I'm saying. There aren't. So then, what is the purpose for the GPS other than just to make sure he doesn't cross a jurisdictional line? Well, those jurisdictional lines are important, Your Honor. I didn't say they weren't important. I'm just asking if there's anything of a reason. I'm not quibbling right now about that. I'm just saying is there any other reason other than that? He also had an obligation to attend sex offender and mental health treatment, which everybody agrees he needs. So, if he's not there, you don't need GPS. He don't need GPS. He's not here. Oh, that's to find him? After you know that he's violated by not being there? That is to find him. He absconded from jurisdiction and couldn't be found for more than a month, Your Honor. So, finding him is an important thing. It's also important that... But then everybody on probation ought to have GPS monitoring them because finding them is important, isn't it? That's true, but there's a requirement that it be no more restrictive than reasonably necessary. I think in the mine run case, it's enough to say, hey, make sure you should report as necessary. Make sure you don't leave the jurisdiction. I think the court said in Hamilton, there's a bit of an act of faith there that he'll comply. Here, he's defied that multiple times. He has demonstrated that he will not simply follow orders to be where he was supposed to be. So, something more is needed. The district court, within its discretion, can conclude reasonably that he needs something more. And that's why GPS is necessary in this case when it probably isn't in every person, in the case of every person who's on probation or supervisory. I do want to talk also about the device restriction. That is directly related to his history and characteristics. His own words to his probation officer was, the internet is my downfall. And he violated a broader version of this very condition. Not once, and not just most recently, but twice. And he lied about his device use. It was his device use that got him kicked out of a residential reentry center. And so the condition is appropriately tailored to it. This court held in Hamilton, Comer, Amman, that you look at three things. You look at whether he used the internet in his underlying offense. And I take from this court's opinion that I was not able to convince this court that we proved that. And that's the law of the case now, right? Yes, Your Honor. And so I'm not saying that his underlying offense does the trick. But it also says, if there's characteristics in his history that show that this is necessary. And here it is. It was the internet was his downfall. And he violated a device restriction like this. So the question is, is it more restrictive than reasonably necessary? And the answer is no, because, for two reasons. One, it categorically exempts employment-related devices. And two, it requires the approval of his probation officer. And that's no small thing, because this court held in Amman, that the probation officer's instructions themselves have to comply with 3583D. So those instructions cannot be more restrictive than 3583D permits. And he has multiple remedies. Well, for example, you know, you were representing the United States, and I understand that. But let's just be so common sense and reasonable. Your Honor, I apologize. I can't hear you. Let's just be, I know you represent the United States, but let's try to be common sense and reasonable. I try to do that every day. I know you are. That's why I'm saying it. I'm trying to get you another hat. I know you're intelligent. I'm trying to put another hat on. And that is in terms of just the common man and woman in society not representing the United States. The internet is now, it's life for people. I mean, that's, you know, it's so broad. For example, I mean, I was in the mall with someone, a young person trying to get a first job. We only walked through the corridor, and she was able to apply by just a cue thing. I said, I was like a dinosaur walking through the mall. I said, goodness. We had to go in there and plead and beg and resume and just click, click. It's too broad. I mean, I know that he needs to be monitored, but to say that the only time you can use is for employment, but can he use it in terms of trying to get an Uber to get to work? Yes, you're right. He can? Yes, because his probation officer is going to approve that. How do you know that? It's there for employment. Does it mean to get employment, to keep employment, too? We know it for two reasons. Why? How do we know it for two? We have five years of history of the probation officer allowing him to use devices for that purpose. Even when the district court banned him categorically from all Internet, the probation officer set him up with a device at a rehabilitation center. Yeah, but probation officers are not supposed to sentence people. Courts are. Yes, you're right. And the court said, this time, this time, the only restriction you can allow, you can use it for employment. Or as approved by the probation officer. Or as approved. Well, that's a full restriction. Your Honor, if the defendant, if Mr. Ellis wants to order a hamburger, and the probation officer says, no, you can't use a device to order a hamburger, he has two remedies. What? First, he can petition the court for a modification. Doesn't do well for him when he goes to court to get anything that's favorable for him. What's the other one? The other one is that if he were to face a revocation hearing, as happened in Amin, he could say the specific instructions are subject to an as-applied challenge and they're more restrictive than reasonably necessary. And, Your Honor, I think you don't get to that point, because ultimately that's not how the probation office works. The probation office, and we don't, I'm not asking this court to get it. But can he use the Internet to find a church that he'd like to go to? Sure. What do you mean sure? How is that? Is that employment? It would be very hard. Mr. Enright, how can you say that in response to the court? Sure. Based on what was written there, how can you say that's sure? Because the probation officer can't exceed 3583D in restricting. There's nothing about that saying you can't restrict a person from going to church. You can say things like this. There are too many kids there. You can't go on the Sunday when they have kids church. Wait a minute. Let me finish my question. I apologize. You can't go to church the Sunday when they have kids Sunday because there's too many children there. So not that Sunday. What do you mean? It's not clear at all that he could do that. The world construes by its wit. The court must construe by the law. Absolutely. And so you're talking about, well, sure, it'll be fine. We don't know that because you're sentenced by a court. That's why we're here last time. Because of that. Oh, we could have done that last time. Well, it's restrictive. It says completely. But I'm sure a nice probation officer is going to be very lenient in looking at what the judge said. No, no, no. This court has held that the district court can delegate the power to impose broad restrictions on the Internet to a probation officer. It held that in Coleman. It held that in Hamilton. It held that in Amin. So there is a role for the probation officer in doing that. And the probation officer has the benefit of doing that. An ordinary church service, I'm sure it would be a hard thing for us to defend a revocation based on, I used Uber to go to church in violation of my probation officer's instruction. But if the probation officer has a situation where, look, he's been looking at kids. This is a special kid's ceremony. We want to have someone go with him. And we can't. See, the problem is. That's a very fact-specific thing. Our nation was born with a sense of, we didn't have a monarchy because we said, no, we don't want to be subject to a good king or a bad king. We want to have a rule of law. Yes, Your Honor. I'm not talking about the judge. I'm just talking about the whole idea of being a rule of law. Because one day the king might be lenient. Another day he may be draconian. That's why it's a rule of law. And then we follow that principle here and here. The rule of law under the statute by Congress is that the judge sentences. You're saying that we have to rely upon the probation officer saying, I'm sure it would be hard for him or her not to do that. And you might be right. But that's the thing about it. It's a rule of law, not whether or not. And so we're looking to, I would hope, again, as we did before, what's there. And what you're telling me is that we can take silence in the fact that it's going to be a nice probation officer and she is not going to refuse something that's reasonable like church or like, you know, right? That's what you're saying. That is not what I'm asking. Oh, I thought you said that. I think that is a fact this court can glean from the five years of history we have here. But this court certainly does not need to trust the probation officer. Ellis can seek modification if there's unreasonable restrictions. And Ellis can defend against a revocation if the restrictions exceed 3583D. And that is the law. It is the law that gives the probation officer. We don't want to keep coming back here. It takes time to come back to the appellate court to do this. Let's do it now. Why not? And get it correct now. The urgency of now is very important in justice. It is, Your Honor. But the standard this court has to apply is whether a restriction is relevant to his history and characteristics, which I respectfully suggest the district court reasonably concluded it is. And it's no more restrictive than reasonably necessary, allowing the measure of discretion that the law gives. The challenge, it seems to me, from Mr. Ellis is twofold. One is that this effectively is a complete ban. And it seems to me, or I think maybe threefold. One is that it's a complete ban. One is that it's an improper delegation. And two, that it's an improper delegation. And three, that it's more reasonable, more restrictive than necessary. Yes, Your Honor. I think that's how I understand my friend's argument. It seems to me it's hard to argue this is a complete ban. I mean, by definition, there's two ways it's not a complete ban. It's got an employment exception. And it's got an approval by probation. So, you know, maybe it could be applied in a way that's a complete ban. Well, it really couldn't because it has employment exceptions. The next issue is whether it's an improper delegation. And, you know, we've got some law on that that I would suggest allows this. But I get the arguments there. So it seems to me this comes down, the best argument Mr. Ellis has is that it's more restrictive than is reasonably necessary. Particularly if you have other conditions like monitoring devices. Yes, Your Honor. Tell me why it doesn't violate that last argument that it's more restrictive than necessary from the government standpoint. So the district court answered a lot of that in its dialogue with the defense counsel below. One of the things the defense counsel proposed was a notification requirement. The court said, well, you know, what if he's doing something improper? The probation officer needs to do more than just know about that. They also proposed, well, what about monitoring? And the district court said, well, maybe. But he may be able to install something on the phone that supports the monitoring efforts. He's had this history of warding supervision. What's your response to that? Can you propose? The district court made this offer and asked the defense attorney, can you propose language that would be less restrictive? That would accomplish what is a primary goal? Keeping him from viewing child pornography and making sure the probation officer can monitor everything he's doing on the internet. She said no. Well, what if we were to buy into Mr. Ellis' counsel's argument about this? What can you agree to to get this case off your back? What would you tell us that we should, if we're inclined to agree with her, what would you say the condition should be? Well, I think this condition's a reasonable one. Frankly, I think a less restrictive condition would also be reasonable. Well, I'm suggesting that we might disagree. So what would be the next step down? I'm not sure, Your Honor. I suppose the court could say the condition in Amin, my friend proposed, would probably be fine. But I don't know that it would change things. Because the way the probation officer implemented the condition in Amin was to instruct him, you can't use any device not approved by the probation officer. That's what the instruction was. And the court upheld it in Amin. Upheld the instruction from the probation officer applying 3583D. I would struggle with any condition that left no discretion to the probation officer to instruct about what devices he could use. And I would struggle with a condition that didn't allow the probation officer to say, if you're using that device to view inappropriate materials, to communicate with the child, he was communicating with an eight-year-old in 2015, if you're using it to view illegal material, you've got to stop. And that, I think, I suspect that's where my friend would not be willing to agree. Because ultimately there would be some discretion for the probation officer to say, let's stop using the internet for that purpose. And I don't know if the court's interest can be accommodated by something like that. Well, we know he's not supposed to use it for that purpose. That's what monitoring is for. Right? Yes, Your Honor. That goes without saying he's not supposed to use it for that purpose. But see, the problem is this. This man has been going in and out, just prison or probation, over and over and over and over. When you have a situation, say it's employment, well, what do you do if you're using the thing at 12 o'clock at night? And you say that's employment, right? And you can. You can apply for a job 24-7, correct? Sure, Your Honor. All right. So then he could use it at midnight. This approval condition, Your Honor, is device specific. So ordinarily the probation officer approves a device. Right. It's not that he has to call them up every time. I would like to order McDonald's. Can I do that? That's not generally how it works. And that's not how the location is phrased in the judgment. It's devices. Right. So he has a device. So you have that. So why is it just employment? Why do you have to? It's not just that. Can't you monitor if, and hopefully he doesn't, if he goes to a site that he's not supposed to be there, that's already capable through monitoring, right? Why do you have to restrict it to employment? Well, Your Honor, the probation officer, the district court addressed that specifically. I'm asking you to address this before. We're not in district court now. We're in the Court of Appeals. Sure, Your Honor. Because the probation, because he could install something on the phone that would make the monitoring ineffective. And that would be consistent. He could say that you trailed off. He could do what? He could install something on the phone that would make the monitoring ineffective. That was the district court's concern in the light of his history of thwarting supervision. That's why the court wanted to give the probation officer the flexibility to approve devices. How does, accepting that, it is, how does approving the device and then say you go through, I got a device, it's got to be approved. And, you know, monitoring technology is on it. And it's approved. How does approving the device relate to post-approval actions that nullify the effects of the monitoring activity? The probation officer could refuse to approve devices that are capable of being modified in that way. Based on its knowledge of the technology, which the probation officer is in a much better position to keep up on and focus on than the district court or this court with all due respect. That's what the probation officer does routinely. They're familiar with monitoring software, monitoring programs, devices. And this court, the probation officer has made So there's really no need to restrict it to employment. You just gave the answer, really. You're right. That could be done. So that's what makes it too broadly, perhaps. Because you're restricting employment. It shouldn't be because you said that the capabilities are there to monitor by the device that's used and technology to make sure you're not counter-indicating this ability to track. So you're carving out an exception for just employment. But people live other than just their jobs. As a matter of fact, most people say the happiest moments they have are not employment moments. So, you know, it's not for punishment. It's to help a person to be a good human being, to be a better person. So you're saying you have the technology, but then you're just sort of like, well, no, just employment. It's almost like setting him up to fail again. Aha, that wasn't employment. That was somebody else. You called up your friend. It means you can't call your friend. You can't use it to call your friend. You can't connect with people who might be trying to help you get through your addiction that he I think has confessed to have. I mean, so why just employment? I see him over time. I know, but I'm asking the question to you again. I would love to answer it, Your Honor. It's not just employment. Because the exception for devices approved by the probation officer is much broader than that. And the reason the condition that broadly delegates that much authority to the probation officer is within the court's discretion. It's because he has this history of pornography addiction and getting kicked out of residential reentry centers because of his use of devices. Right. It requires the district court is within its discretion to delegate broadly to the probation officer, to deal with the myriad ways he could court supervision to ensure that he gets the rehabilitation he needs, that he gets into a residential reentry center without getting kicked out because of his phone use, if that's what he needs. But he can't use the internet to try to get to a facility to help him. He can't even use it to get to a psychiatrist or psychologist because that's not employment. He can on a device approved by the probation officer. The probation officer doesn't have to limit it to employment. But he could. But he can't. You're right. He doesn't have to. But again, he's not a king. It's the rule of law. The only carve-out for use is employment. That's what I'm talking about. Just employment. That's the only carve-out. He's allowed to use it without right. Yes. And the rest he's left to the mercy of a probation officer, which to me is, in effect, the sentencing person. Backed up by the court. It's not backed up by the court. I mean, so it is. I understand, Your Honor.  this court has made clear that those instructions have to comply with the statute and that there are remedies if they do not. I want to go back to my first inquiry. I thought this thing was approval of a device only relates to a device that he cannot put a monitor on. That's where the approval comes into play. If he can monitor the device, he has no right to deny him access to that. Is that what... I'm missing something? I don't know that I quite see it that way, Your Honor. The court said during the sentencing hearing that that was the goal. He wants to make sure he can be monitored. The court made clear he's going to have internet. He's supposed to have internet. And the court made clear that the ultimate goal is to prevent him from viewing child pornography. And those instructions this court has held. They're relevant. They're something this court can consider in Comer and in Van Donk. But I think their role here is to provide guidance to the probation officer not to serve as a replacement for the condition in the order. But if he's subject to revocation or if he seeks modification because the probation officer has transgressed the district court's discretion I think he'd have a really strong case, Your Honor. And I think that's where the rule of law and the role of the courts guarantee that his rights are protected under 3583 even when there's a delegation to probation. If this court has no further questions I appreciate this court indulging me with as much time as it has. But I won't take any more of Your Honor's time. I think you're glad to be finished. Thank you, Mr. Enright. Appreciate it. Ms. Ball, you have a few minutes left. Thank you, Your Honor. I just want to quickly address GPS points and then move on to the internet which is kind of the meteor legal issue here. So for GPS my friend the government gave two reasons why it's appropriate. First, to make sure he attends treatment. The last time Mr. Ellis missed a treatment appointment was August 2016. So five years before the district court imposed this. Again, he said, well, he's absconded. October 2015 when he was suffering from homelessness during his first supervision term. So those are too far in the past we would say and the government just says, well, we need to ensure he doesn't leave the jurisdiction. But as Judge Gregory pointed out, this isn't about enforcing an exclusion zone. This isn't making sure a DV offender doesn't go to his ex-wife's house. This is nobody on supervision can leave the jurisdiction without supervision. So if that is the basis to affirm this condition, every single defendant, which I think is 95% of federal defendants are given a supervision term, would be subject to GPS monitoring which requires them to charge the device every day, pay $3 a day for the monitoring activity, and then be subject to the probation officer sending him alerts at midnight like his probation officer did here. So moving on to the internet condition, I'll just actually go because Judge Quattlebaum laid out our three points pretty well here. The effective ban and my quest for conciseness did I would say it is effectively a non-professional ban. So there is the employment carve out, but as three courts have found, the 9th, 3rd, and 1st and Lacoste, Hamilton, and Ramos, the problem is when appellate courts are reviewing these no X without probation prior approval, for 3583D compliance purposes, they have to assume that it is no X is valid. We don't interpret the condition according to the greatest deprivation it permits under its language. Not how a probation officer could theoretically reasonably interpret a condition that otherwise permits this. I think that's fair,  it seems if you marry that up with a mean, which requires the discretion that is delegated to comport with a statute that provides boundaries that should be considered too, doesn't it? So no it doesn't, and this is to the second point with the unreasonable delegation and the government's reliance on a mean, it did not approve the condition that is at issue here. The condition approved in a mean was the defendant shall be subject to screening or monitoring of internet use. That is diametrically different and in fact, that is more akin to what we proposed to the district court and the district court denied. So we said maybe it can be narrowly tailored whether through monitoring. The court's response was, well the wording in condition 9 is nothing new. But the problem is, they're right, it's nothing new. And this probation officer in the past has denied Mr. Ellis the opportunity to use a laptop to use online courses, if you look at JA 184. This probation officer has also denied internet access to other sex offenders. I know there's a disagreement with my friend, but our contention is Ralph Adamson, we cited in that, was denied internet access through this very condition. So we would agree that, you know, we don't have any dispute with the issue that the district court can set guiding principles that a probation officer then can do ministerial tasks to carry out. But simply banning internet use is not, doesn't give any guiding principles. And then the third point with the unreasonable deprivation, I would just say, this is kind of resolved. So the employment carve-out isn't sufficient here. And you know that not only from this court's prior decision in this appeal where it's cited to non-employment uses such as securing houses, communicating online with friends, but also this court's decision in Hamilton where it said quote, the internet is crucial in finding jobs, paying bills, and navigating life in this digital age. So for those reasons and those cited in a brief over time we would ask the court to vacate those conditions of supervised release. Thank you very much.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Henry F. Floyd